IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDRE CHRISTOPHER WILLIAMS, | : | |
| | : | |
| Plaintiff, | : | No. 4:CV-07-1137 |
| | : | |
| v. | : | (McClure, J.) |
| | : | |
| LACKAWANNA COUNTY PRISON; JANINE DONATE; BARRY CRAVEN; SCOTT BLUME; CHRIS MASCI; and ARAMARK CORRECTIONAL SERVICES, LLC, | : | (Mannion, M.J.) |
| | : | |
| Defendant | : | |

**MEMORANDUM**

April 13, 2010

## I. BACKGROUND

On June 25, 2007, plaintiff Andre Christopher Williams, then a prisoner at

Lackawanna County Prison ("LCP"),[1] commenced this civil action pro se under 42

U.S.C. § 1983. Williams complains that, while he was located at the LCP, he was

provided insufficient food; assaulted by corrections officers; denied access to a

telephone to speak to family, friends, and his attorney; denied reading materials,

including access to the law library; and allowed only one haircut a month and one

---

[1] The plaintiff currently resides at the United States Penitentiary Canaan ("USP-Canaan") in Waymart, Pennsylvania.

razor, without disinfectants, used by a number of inmates.

Before the court is a motion for summary judgment filed by one of the defendants, Aramark Correctional Services, LLC.

## II. PROCEDURAL HISTORY

The matter initially was referred to United States Magistrate Judge Malachy E. Mannion.

In his initial complaint, Williams named the LCP[2] and Janine Donate, the Warden at LCP, as defendants. In an amendment to his complaint ("First Amendment"), filed on July 2, 2007 (Rec. Doc. No. 6), Williams added Correctional Officers Barry Craven and Scott Blume as defendants. On July 5, 2007, Williams filed a motion in which he sought leave to amend his complaint so as to provide Correction Officer Blume's full name and add a new defendant, Sergeant Chris Masci. (Rec. Doc. No. 8) ("Second Amendment"). Magistrate Judge Mannion granted this motion on July 17, 2007. (Rec. Doc. No. 13). On October 8, 2007, defendants Craven, Blume, Masci, the LCP, and Donate

---

[2] The United States Supreme Court has noted that, barring a state's consent to being so sued, a § 1983 suit filed "against the State and its Board of Corrections is barred by the Eleventh Amendment . . . ." Alabama v. Pugh, 438 U.S. 781, 782 (1978). In addition, a correctional facility "is not a 'person' under § 1983." Phippen v. Nish, 223 Fed. Appx. 191, 192 (3d Cir. 2007) (citing Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973)). In light of the above, we will dismiss all of Williams' claims against the LCP, as he cannot properly bring a suit against such an entity and as the LCP is not a person for purposes of a § 1983 claim.

("Lackawanna Defendants") filed an answer with affirmative defenses. (Rec. Doc. No. 31).

On March 10, 2008, Williams filed another motion for leave to file an amended complaint. (Rec. Doc. No. 40). Magistrate Judge Mannion granted this motion on April 3, 2008. (Rec. Doc. No. 42). In his April 3, 2008 Order, Magistrate Judge Mannion ordered that Williams file an amended complaint within thirty (30) days of the date of the Order, that the "amended complaint shall be complete in and of itself," and that the "amended complaint shall include any and all defendants whom the plaintiff wishes to name in this action . . . ." Id. at 1-2. Williams filed his amended complaint on April 24, 2008, in which he named as a defendant Aramark Correctional Services, LLC ("Aramark"), a company he claims provided food to the LCP.[3] (Rec. Doc. No. 44) ("Amended Complaint").

After Magistrate Judge Mannion granted the Lackawanna Defendants' motion for an extension of time in which to file an answer to Williams' amended complaint (Rec. Doc. Nos. 49 and 50), the Lackawanna Defendants filed an answer on June 26, 2008 (Rec. Doc. No. 52). Aramark filed an answer, with affirmative defenses, to the amended complaint on July 30, 2008. (Rec. Doc. No. 54).

---

[3] In his amended complaint, Williams refers to the defendant as being Aramark Foods. See id. As noted above, the correct name for the defendant is Aramark Correctional Services, LLC. (See Rec. Doc. No. 55).

On July 31, 2009, Aramark filed the instant motion for summary judgment. (Rec. Doc. No. 78).[4] Aramark filed a brief in support of its motion for summary judgment on August 6, 2009. (Rec. Doc. No. 80). Williams filed a brief in opposition to the motion for summary judgment on August 25, 2009. (Rec. Doc. No. 81).

On February 25, 2010, Magistrate Judge Mannion issued a nine (9) page report and recommendation. (Rec. Doc. No. 88). In his report and recommendation, the magistrate judge concluded that Aramark's motion should be granted, as Williams failed to put forth any evidence that would support his claim

_____

[4] The court notes that the Lackawanna Defendants have filed neither a motion to dismiss nor a motion for summary judgment. The time for filing either motion has passed. On October 8, 2007, defendants Craven, Blume, Masci, the LCP, and Donate ("Lackawanna Defendants") filed an answer with affirmative defenses. (Rec. Doc. No. 31). These defendants filed an answer to the amended complaint on June 26, 2008. (Rec. Doc. No. 52); see also Fed. R. Civ. P. 12(b) (noting that a motion asserting a defense for failure to state a claim upon which relief can be granted "must be made before pleading if a responsive pleading is allowed"). According to an order issued by Magistrate Judge Mannion on May 7, 2009, the deadline for filing dispositive motions was August 1, 2009. (Rec. Doc. No. 77). Per an order dated December 2, 2009, the Lackawanna Defendants were provided an extension of time of twenty (20) days in which to file answers to Williams' interrogatories. (Rec. Doc. No. 85). Pursuant to the recently-amended Fed. R. Civ. P. 56, which took effect as of December 1, 2009, "unless a different time is set by local rule or the court orders otherwise: (A) a party may move for summary judgment at any time until 30 days after the close of all discovery." There exists no different time as set by local rule, there is no court order otherwise, and it is clear that well over thirty days have passed since the close of discovery. Therefore, the time for filing a motion for summary judgment has passed as well.

that Aramark had violated his constitutional rights based upon the food served to him while at LCP. Id. at 9.

Williams has not filed any objections to the magistrate judge's report and recommendation. The time for doing so has since passed. Because Williams has elected not to object to the report and recommendation, and because we agree with Magistrate Judge Mannion's thorough analysis and conclusion, we will adopt the report and recommendation in full. For the purposes of judicial economy, we will not rehash the sound reasoning employed by the magistrate judge. However, the present motion pertains only to Williams' claims against Aramark. Therefore, we will engage in a re-screening of Williams' complaint and amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).[5] Those claims not disposed of pursuant to this provision will be set for trial.

## III. STANDARD OF REVIEW

---

[5] In addition to § 1915(e)(2), there are a number of other dismissal provisions found in federal law. See 28 U.S.C. § 1915(A); 42 U.S.C. § 1997e(c). As noted by the Court of Appeals for the Third Circuit, § 1915A "'is applicable at the initial stage of the litigation, while § 1915(e)(2)[and 42 U.S.C. § 1997e(c) are] . . . applicable throughout the entire litigation process.'" Grayson v. Mayview State Hosp., 293 F.3d 103, 110 n.11 (3d Cir. 2002) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 608 (6th Cir. 1997). As such, "the PLRA sets up a two-step dismissal process by which dismissal can occur early for the facially inadequate complaints pursuant to the screening statute or can occur later by either of the remaining provisions 'should it become apparent that the case satisfies [one of these] sections.'" Id. (quoting McGore, 114 F.3d at 608).

When screening the complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) to determine whether the complaint fails to state a claim upon which relief can be granted, the court will apply the standard applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Weiss v. Colley, 230 F.3d 1027, 1029 (7th Cir. 2000).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). "The tenet that a court must accept as true all of the [factual] allegations contained in the complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint. Kost, 1 F.3d at 183. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint. Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the allegations in the complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face.  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1960 (2007).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 129 S.Ct. at 1950.  In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading.  Hellmann v. Kercher, 2008 U.S. Dist. LEXIS 54882, 4 (W.D. Pa. 2008).  Federal Rule of Civil Procedure 8 "'requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests,'"  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964, (2007) (citing Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, (1957)).  However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief  under it.  Hellmann, 2008 U.S. Dist. LEXIS at 4-5.  Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory.  Twombly, 127 S.Ct. at 1965. "[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'shown' - - that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1950 (citing Fed. R. Civ. P. 8(a)).  The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding."  Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).  A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law."  Id. at 326.  If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."  Id. at 327.

## IV.  DISCUSSION

On July 17, 2007, the magistrate judge granted Williams' motion for leave to proceed in forma pauperis, granted Williams' motion to amend, and ordered service on the then-defendants Craven, Blume, Masci, LCP, and Donate.  (Rec. Doc. Nos. 13 and 14).  On May 13, 2008, the magistrate judge ordered service on Aramark Foods.  (Rec. Doc. No. 47).  Williams claims that his constitutional rights were violated when he was assaulted by corrections officers; denied telephone access so that he was unable to speak to his attorney, friends, and family; denied reading material, including access to the law library; and allowed only one haircut

a month and access to only one razor that was shared among a number of inmates, without disinfectant.

## A. The Alleged Assault by Corrections Officers Craven, Blume, and Masci

First, Williams claims that his constitutional rights were violated when he was assaulted by corrections officers in his cell. The allegations, taken as true, are serious. In his amended complaint, filed on July 2, 2007 (Rec. Doc. No. 6), Williams claims, "I have also been physically assaulted by two C/O's [Corrections Officers] while I was handcuffed and shakeled [sic]." Id. at 2. More specifically, Williams alleges that, on June 27, 2007, Corrections Officers Blume and Craven "walked up to me while I was handcuffed and shakeled [sic] laying on my stomach [sic] [and] C/O Blume started punching me while Officer Barry Craven kicked me numerous time in my face." Id. at 3. By motion seeking leave to amend his complaint, Williams added Sergeant Masci as a defendant. (Rec. Doc. No. 8). In an attachment to this motion, Williams also alleges that, "after [Williams] was handcuffed and shackeled [sic] [,] Sargent [sic] MASCI had his foot on [Williams'] neck while Correctional Officers SCOTT BLUME and BARRY CRAVEN were still punching [Williams] and kicking [him]." Id. at 3. Williams contends that Warden Donate "approves and encourages this type of behavior of her prison and staff members . . . ." Id.

We construe the claim against defendants Blume, Craven, and Masci as being one of excessive force raised under the Eighth Amendment to the United States Constitution. According to the United States Supreme Court, "the core judicial inquiry" in an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992).

The above allegations would be sufficient for the purposes of Fed. R. Civ. P. 12(b)(6) to survive a motion to dismiss as to defendants Blume, Craven, and Masci; therefore, we will refrain from dismissing Williams' Eighth Amendment claim as to these defendants under § 1915(e)(2)(B). Williams does not simply allege rote legal conclusions in his complaint against defendants Blume, Craven, and Masci; instead, he has supported his allegations of misconduct with specific actions and dates that go well beyond mere "labels and conclusions." See Iqbal, 129 S.Ct. At 1949 (stating that Fed. R. Civ. P. 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (internal quotations omitted). In addition, the facts as pleaded by Williams concerning the alleged assault by defendants Blume, Craven, and Masci go beyond allowing this court to infer "the mere possibility of misconduct." Iqbal, 129 S.Ct. At 1950. Indeed, Williams has

alleged facts that, if true, would "state a claim to relief that is plausible on its face."

Twombly, 550 U.S. at 570. Therefore, this court concludes that Williams has

sufficiently alleged, for the purposes of Fed. R. Civ. P. 12(b)(6), that force was

applied by the corrections officers "maliciously and sadistically to cause harm."

Hudson, 503 U.S. at 7.

     This conclusion is further supported by the plaintiff's pro se status. See

Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003) (noting that, as the plaintiff

had "filed his complaint pro se, we must liberally construe his pleadings, and we

will apply the applicable law, irrespective of whether the pro se litigant has

mentioned it by name") (citing Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir.

2002)). Accepting Williams' allegations as true, Williams has pled facts sufficient

to state a plausible claim to relief as to defendants Blume, Craven, and Masci;

therefore, we will refrain from dismissing this claim as to these defendants. See

Twombly, 127 S.Ct. at 1960.

     However, in his complaints, Williams also indicates that he wishes to sue

Warden Donate. Williams claims the following:

> I have sent numerous grievances to the Warden and nothing has been
> done. She knows of the violation of my rights and failed to do
> anything to fix the situation. She also created these policies and
> customs allowing and encouraging these illegal acts, and she is
> grossly negligent in managing the people she is suppose [sic] to

supervise.

(Rec. Doc. No. 1 at 3).  In his first amendment to his original complaint, Williams

asserts, "Warden Janine Donate refuses to investigate any of my

complaints/grievances.  I have been grieving my issues to her for 8 months now

and she hasn't responded to any of them.  She approves and encourages this type of

behavior of her prison and staff members."  (Rec. Doc. No. 6 at 3).[6]

    With this claim, Williams appears to be alleging a supervisory liability claim

against Warden Donate under 42 U.S.C. § 1983.  According to traditional Third

Circuit precedent, supervisory personnel are only liable under §1983 if they

participated in or had knowledge of violations, if they directed others to commit

violations, or if they had knowledge of and acquiesced in subordinates' violations.

Baker v. Monroe Twp., 50 F.3d 1186, 1191 (3d Cir. 1995).  However, with its

decision in Ashcroft v. Iqbal, the Supreme Court may have cast doubt on the

viability of this standard for holding government officials liable based on a theory

of supervisory liability under §1983.  In Iqbal, the Supreme Court noted that

_____

    [6] To the extent that Williams alleges the violation of his constitutional rights
for any failure by Warden Donate to act on any of his grievances, such a claim
must be dismissed, as "'the failure of a prison official to act favorably on an
inmate's grievance is not itself a constitutional violation.'"  See Rambert v. Beard,
2010 U.S. Dist. LEXIS 23723, at *20 (M.D. Pa. Mar. 15, 2010) (Muir, J.) (quoting
Rauso v. Vaughn, 2000 U.S. Dist. LEXIS 9035, at *16 (E.D.Pa., June 26, 2000)).

"[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 129 S.Ct. 1937, 1948. The Court also emphasized that "[i]n a §1983 suit or a Bivens action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 1949.

Various courts of appeals, including the Third Circuit, have recognized the potential effect that Iqbal might have in altering the standard for supervisory liability in a Bivens or a §1983 suit. See, e.g., Bayer v. Monroe County Children and Youth Servs., 2009 U.S. App. LEXIS 18181, at *8 (3d Cir. 2009) (noting that, in light of Iqbal, "it is uncertain whether proof of . . . personal knowledge [concerning a Fourteenth Amendment violation of procedural due process], with nothing more, would provide a sufficient basis for holding [the defendant] liable with respect to plaintiffs' Fourteenth Amendment claims under §1983"); Maldonado v. Fontanes, 568 F.3d 263, 274-75 n. 7 (1st Cir. 2009) (noting that "recent language from the Supreme Court may call into question our prior circuit law on the standard for holding a public official liable for damages under §1983 on a theory of supervisory liability").

However, it appears that, under a supervisory theory of liability, and even in light of Iqbal, personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right. Additionally, in the context of the Eighth Amendment claim of cruel and unusual punishment, this involvement may be demonstrated "through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also Womack v. Smith, 2009 U.S. Dist. LEXIS 120728, at *15-17 (M.D. Pa. Dec. 29, 2009) (Conner, J.) (noting that, in applying the Rode standard of personal involvement in a case in which the plaintiff alleged cruel and unusual punishment, the Supreme Court's holding in Iqbal "is expressly limited to situations involving discrimination" and that the Court in that case made clear that "the factors necessary to establish a Bivens violation will vary with the constitutional provisions at issue").

Here, Williams has not alleged any facts that would support the personal involvement of Warden Donate in either the denial of the grievance process or the alleged assault.[7]  Instead, Williams merely claims that the warden "refuses to

---

[7] The court would also note that, similarly, Williams has failed to sufficiently allege such involvement on the part of Warden Donate concerning the alleged violations relating to the denial of telephone access; the denial of access to reading material or a law library; or the provision of haircuts to prisoners only once a month.

investigate" his complaints and grievances and has failed to respond "to any of them." (Rec. Doc. No. 6 at 3). In addition, he claims that "[s]he approves and encourages this type of behavior" within the prison, id., that she "created these policies and customs allowing and encouraging these illegal acts," and that "she is grossly negligent in managing the people she is suppose [sic] to supervise." (Rec. Doc. No. 1 at 3). These allegations simply amount to a recitation of the legal elements of a constitutional claim that are insufficient to withstand a motion to dismiss. See Iqbal, 129 S.Ct. at 1949 (noting that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Accordingly, we will dismiss, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the above-referenced claims against Warden Donate premised upon supervisory liability.[8]

## B.  The Alleged Denial of Reading Material

Second, Williams claims his rights were violated when he was denied reading material, including access to the law library. We construe this claim as an access-to-the-courts claim under the Sixth Amendment. The United States Supreme Court has held that, to properly state such a claim, an inmate must

---

[8] Williams' claim relating to the prison's failure to provide inmates with clean razors, a claim that this court construes as being against Warden Donate, is discussed infra, see subsection IV(D).

"demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996). The Court went on to discuss a number of ways in which an inmate might demonstrate such a hindrance. For example, an inmate might show:

> that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint."

Id. See also Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997). As noted by the Court of Appeals for the Third Circuit, "the Court [in Casey] held that to pursue a claim of denial of access to the courts an inmate must allege actual injury, such as the loss or rejection of a legal claim." Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir.1997) (citing Casey, 116 S. Ct. at 2179).

We are constrained to conclude that, based on Williams' complaint, he has failed to properly make out an access-to-the-courts claim under the Sixth Amendment. Williams simply has alleged that he is "being denied [his] access to the law library so [he] can make copies." (Rec. Doc. No. 6). Williams has not demonstrated how this alleged inability to make copies has "hindered his efforts to pursue a legal claim." Casey, 518 U.S. at 351. Similarly, Williams has not alleged

how an inability to make copies has resulted in his failure to meet a technical

requirement, the failure of which has led to, for example, his case being dismissed

or no complaint even being filed.  See id.  As Williams has not alleged such harm,

we conclude that he has failed to properly allege an actual injury as part of his

Sixth Amendment access-to-the-courts claim.  Therefore, we will dismiss

Williams' claim that his constitutional rights were violated when he was denied

reading material, including access to the law library.

## C.  The Alleged Denial of Telephone Access

Third, Williams claims that his rights were violated when he was denied

telephone access, thereby preventing him from speaking to his attorney, friends,

and family.  We first note that the loss of telephone privileges in general simply

does not violate constitutional requirements.  See Overton v. Bazzetta, 539 U.S.

126, 131 (2003) (noting that "[m]any of the liberties and privileges enjoyed by

other citizens must be surrendered by the prisoner" and that "[a]n inmate does not

retain rights inconsistent with proper incarceration"); see also Torrealba v.

Hogsten, 2009 U.S. Dist. LEXIS 93992, at *25-26 (M.D. Pa. Oct. 8, 2009)

(Munley, J.) (concluding that an inmate's telephone privileges did "not qualify as

the minimal necessities of life, such as adequate food, clothing, shelter, sanitation,

medical care and personal safety" and, as such, a complaint concerning a

suspension of such a privilege must fail).  In light of the above, we conclude that a denial of contact between Williams and family or friends does not rise to a constitutional violation; instead, it is not inconsistent with the privileges which rightly "must be surrendered by the prisoner."  Overton, 539 U.S. at 131.

However, a complaint alleging the denial of contact with one's attorney is a different matter, and again implicates the denial-of-access analysis referred to above.  A prisoner making such an allegation must demonstrate actual denial of access and that such denial prejudiced the inmate's ability to prosecute a non-frivolous constitutional claim.  See Casey, 518 U.S. at 355-56.  Here, assuming arguendo that he was denied access to the courts by way of his inability to contact his attorney, Williams has failed to allege that he suffered an "arguably actionable harm" such that the denial "hindered his efforts to pursue a legal claim."  Id. at 351; see also Reynolds, 128 F.3d at 183.  Therefore, we conclude that Williams' claims that his rights were violated when he was denied telephone access must be dismissed.

### D.  The Alleged Denial of Clean Hygiene Paraphernalia

Fourth, Williams contends that his rights were violated, apparently by the

LCP and Warden Donate, because he was allowed only one haircut a month[9] and access to only one razor that was shared among a number of inmates, without disinfectant.  We construe Williams' complaint as alleging, through § 1983, a violation of the Eighth Amendment's prohibition against cruel and unusual punishment based upon Williams' conditions of confinement.

The Eighth Amendment does not require "comfortable prisons," though it also does not allow for "inhumane ones."  See Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).  In Farmer, the Supreme Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at 837.  Therefore, in the prison context and in addition to prohibiting excessive force, the Eighth Amendment imposes duties on prison

---

[9] Providing Williams with a haircut only once a month does not constitute a violation of his Eighth Amendment right against cruel and unusual punishment. Williams does not claim to have been denied the opportunity to have his hair cut altogether, and he has not alleged any injury from such a denial.  See Vile v. Matty, 1991 U.S. Dist. LEXIS 10031, at *6 (E.D. Pa. July 17, 1991) (noting that "[h]aircut privileges . . . fall within the administrative discretion of prison officials. . . . [and that] plaintiffs were not denied haircuts).

officials to "provide humane conditions of confinement," "ensure that inmates receive adequate food, clothing, shelter, and medical care," and "'take reasonable measures to guarantee the safety of the inmates.'" Id. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

Williams has alleged that "they supply us with one razor that 30 inmates have to use with no disinfectant." (Rec. Doc. No. 1 at 2-3). Taking Williams' allegations as true, this court cannot conclude that Williams' allegations are sufficient to allege a violation of the Eighth Amendment. Williams has failed to properly allege the existence of any "substantial risk of serious harm," Farmer, 511 U.S. at 837, that would support his claim. See Ashann-Ra v. Virginia, 112 F. Supp. 2d 559, 573 (W.D. Va. 2000) (concluding that, even if the inmate-plaintiff could prove his assertion that razor sanitation employed by the prison did not meet state health standard, "he fails to demonstrate any substantial risk of serious harm, or future harm, resulting from his exposure to unsanitary clippers or razors"); Roy v. Jenkins, 1988 U.S. Dist. LEXIS 7233, at *6 (N.D. Ill. July 8, 1988) (concluding that plaintiff's allegation that he "was forced to use an unsanitary razor [causing him to develop a rash] does not rise to the level of a serious deprivation of basic human needs . . . and therefore fails to state a

claim"). As such, we conclude that dismissal of Williams' claim based upon the prison's failure to disinfect razors provided to inmates is warranted.[10]

## V. CONCLUSION

For the above-mentioned reasons, this court will adopt the magistrate judge's report and recommendation (Rec. Doc. No. 88) in full; therefore, the motion for summary judgment filed by Aramark Correctional Services, LLC (Rec. Doc. No. 78), will be granted. In addition, pursuant to § 1915(e)(2)(B)(ii), this court will also dismiss as to all defendants the plaintiff's claims concerning the denial of telephone access to his family, friends, and attorney; the denial of access to reading materials and the law library; the prison's allowance of only one haircut a month; and the denial of clean razors. We will also dismiss as a defendant the LCP. As a claim remains against Corrections Officers Craven, Blume, and Masci for the alleged assault on Williams, trial on this remaining claim will be scheduled at the convenience of the court. As no jury demand has been filed by any

---

[10] We conclude that dismissal would also be appropriate based upon Williams' failure to properly state "a sufficiently culpable state of mind" on the part of Warden Donate. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Williams has not adequately alleged that Warden Donate knew "that inmates face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847 (1994).

party, the trial will be non-jury.  Fed.R.Civ.P. 38(d).

                                                s/ James F. McClure, Jr.
                                          James F. McClure, Jr.
                                          United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANDRE CHRISTOPHER        :
WILLIAMS,                    :
                              :
            Plaintiff,         :              No. 4:CV-07-1137
                              :

|                          |   |                  |
|--------------------------|---|------------------|
| v.                       | : | (McClure, J.)    |
|                          | : |                  |
| LACKAWANNA COUNTY        | : | (Mannion, M.J.)  |
| PRISON; JANINE DONATE;   | : |                  |
| BARRY CRAVEN; SCOTT      | : |                  |
| BLUME; CHRIS MASCI; and  | : |                  |
| ARAMARK CORRECTIONAL     | : |                  |
| SERVICES, LLC,           | : |                  |
|                          | : |                  |
| Defendant                | : |                  |

## ORDER

April 13, 2010

For the reasons set forth in the accompanying Memorandum,

**IT IS HEREBY ORDERED THAT:**

1.    United States Magistrate Judge Mannion's Report and
      Recommendation is **ADOPTED IN FULL**.  (Rec. Doc. No. 88).

2.    The Motion for Summary Judgment filed by Aramark Correctional
      Services, LLC, is **GRANTED**.  (Rec. Doc. No. 78).

3.    Plaintiff's claims, as to all defendants, concerning the denial of
      telephone access to his family, friends, and attorney; the denial of
      access to reading materials and the law library; the allowance of only
      one haircut a month; and the denial of clean razors are **DISMISSED**
      pursuant to § 1915(e)(2)(B)(ii).

4.    The Lackawanna County Prison is **DISMISSED** as a defendant.

5.    A non-jury trial will be scheduled at the convenience of the court as to
this remaining claim against Corrections Officers Craven, Blume, and
Masci for the alleged assault on Plaintiff.

                                    　s/ James F. McClure, Jr.　　　
                                    James F. McClure, Jr.
                                    United States District Judge