IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDRE CHRISTOPHER WILLIAMS, | : | |
| | : | |
| Plaintiff, | : | No. 4:CV-07-1137 |
| | : | |
| v. | : | (McClure, J.) |
| | : | |
| LACKAWANNA COUNTY PRISON; JANINE DONATE; BARRY CRAVEN; SCOTT BLUME; CHRIS MASCI; and ARAMARK CORRECTIONAL SERVICES, LLC, | : | (Mannion, M.J.) |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

September 14, 2010

## I. BACKGROUND

On June 25, 2007, plaintiff Andre Christopher Williams, then a prisoner at Lackawanna County Prison ("LCP"),[1] commenced this civil action pro se under 42 U.S.C. § 1983. Williams complained that, while he was located at the LCP, he was provided insufficient food; assaulted by corrections officers; denied access to a telephone to speak to family, friends, and his attorney; denied reading materials, including access to the law library; and allowed only one haircut a month and one

---

[1] The plaintiff currently resides at the United States Penitentiary Canaan ("USP-Canaan") in Waymart, Pennsylvania.

razor, without disinfectants, used by a number of inmates.

## II. PROCEDURAL HISTORY

The matter initially was referred to United States Magistrate Judge Malachy E. Mannion. In his initial complaint, Williams named the LCP and Janine Donate, the Warden at LCP, as defendants. In an amendment to his complaint, filed on July 2, 2007 (Rec. Doc. No. 6), Williams added Correctional Officers Barry Craven and Scott Blume as defendants. On July 5, 2007, Williams filed a motion in which he sought leave to amend his complaint so as to provide Correction Officer Blume's full name and add a new defendant, Sergeant Chris Masci. (Rec. Doc. No. 8). Magistrate Judge Mannion granted this motion on July 17, 2007. (Rec. Doc. No. 13). On October 8, 2007, defendants Craven, Blume, Masci, the LCP, and Donate ("Lackawanna Defendants") filed an answer with affirmative defenses. (Rec. Doc. No. 31).

Williams filed an amended complaint on April 24, 2008, in which he named as a defendant Aramark Correctional Services, LLC ("Aramark"), a company he claimed provided food to the LCP.[2] (Rec. Doc. No. 44).

The Lackawanna Defendants filed an answer on June 26, 2008 (Rec. Doc.

---

[2] In his amended complaint, Williams referred to the defendant as being Aramark Foods. See id. As noted above, the correct name is Aramark Correctional Services, LLC. (See Rec. Doc. No. 55).

No. 52). Aramark filed an answer, with affirmative defenses, to the amended complaint on July 30, 2008. (Rec. Doc. No. 54).

On July 31, 2009, Aramark filed a motion for summary judgment. (Rec. Doc. No. 78). Magistrate Judge Mannion, on February 25, 2010, issued a nine (9) page report and recommendation. (Rec. Doc. No. 88). In his report and recommendation, the magistrate judge concluded that Aramark's motion should be granted, as Williams failed to put forth any evidence that would support his claim that Aramark had violated his constitutional rights based upon the food served to him while at LCP. Id. at 9. By a Memorandum and Order dated April 13, 2010, this court adopted Magistrate Judge Mannion's report and recommendation in full. (Rec. Doc. No. 89).

However, in our April 13, 2010 Memorandum and Order, we also exercised our power pursuant to 28 U.S.C. § 1915(e)(2)(B) to re-screen Williams' complaint and amended complaint. Upon engaging in such re-screening, we dismissed Williams' claims as to all defendants alleging the denial of telephone access to his family, friends, and attorney; the denial of access to reading materials and the law library; the allowance of only one haircut a month; and the denial of clean razors. Id. at 23. However, we let stand Williams' claim against Correctional Officers Craven and Blume, and Sergeant Masci, for their alleged assault on the plaintiff

3

and indicated that a non-jury trial would be scheduled at the convenience of the court. Id. at 24.

Prior to trial, on May 6, 2010, Williams filed a motion to compel (Rec. Doc. No. 93), in which he sought the court to direct the remaining defendants to supplement their responses to Williams' interrogatories (Rec. Doc. No. 82) and request for production of documents (Rec. Doc. No. 46). In our May 12, 2010 Order, we noted the long history of Williams' requests that the defendants in this case be required to respond to his interrogatories. (See Rec. Doc. Nos. 41, 50, 61, and 83). Pursuant to our May 12, 2010 Order, we directed defendants Blume, Craven, and Masci to respond to Williams' motion (Rec. Doc. No. 93) within ten days of the date of our Order. (Rec. Doc. No. 94). On May 20, 2010, the defendants' counsel, Thomas B. Helbig, Esq., certified that copies of the defendants' answers to Williams' interrogatories were mailed to Williams on May 20, 2010. (Rec. Doc. No. 95).³

---

³ It appears as though the answers provided by the defendants responded to the plaintiffs' first set of interrogatories so served, not the plaintiff's second set. (See Rec. Doc. No. 104, Exhbt. B). At trial, while Williams acknowledged his receipt of the defendants' answers to the first set of interrogatories, plaintiff contended that he had yet to receive answers to his second set of interrogatories. (Trial Tr., 7:6-12). Defendants' counsel responded, "Your Honor, there's no additional information I can provide Mr. Williams that will have any bearing whatsoever on the sole issue that's left in this case." (Trial Tr., 7:19-21). This court proceeded with the trial, noting that, at the conclusion of the trial, the court

A non-jury trial was held on May 27, 2010. As directed by the court, both parties filed proposed findings of fact and conclusions of law. (Rec. Doc. Nos. 104 and 107). In addition, the plaintiff filed a response to the defendants' proposed findings of fact and conclusions of law on July 26, 2010. (Rec. Doc. No. 109). This opinion represents this court's decision on the merits of the instant case.

## III. FINDINGS OF FACT

As noted above, at the time relevant to the instant action, plaintiff Andre Christopher Williams was an inmate at the LCP. The remaining defendants, Correctional Officers Scott Blume and Barry Craven and Sergeant Chris Masci, were officers at the LCP.

From May of 2006, the time when Williams began his incarceration at the LCP, through June of 2007, the time of the incident in question, Williams spent the majority of his time in the Restricted Housing Unit ("RHU" or "T-Block") for

---

could determine whether an order requiring additional responses would be necessary if Williams believed he had been harmed by not receiving answers to his second set of interrogatories. (Trial Tr., 9:4-16). Upon review of the submissions, we find an additional hearing or order unnecessary. As defense counsel has indicated, we believe the defendants have provided to the plaintiff all relevant information in their possession. In addition, the subjects at issue in the plaintiff's second set of interrogatories were either of no relevance and not reasonably calculated to lead to the discovery of admissible evidence, inquired into by the plaintiff at trial, or could have been inquired into by plaintiff at trial. As such, we find no need to conduct a hearing or order additional responses by the defendants to the plaintiff's second set of interrogatories.

5

violating a number of prison rules. (Trial Tr., 16:17-24). Roughly three months before the incident in question, Williams was charged and convicted for "creating a disturbance and a sanitary violation" by flooding his cell. (Trial Tr., 22:18-23:7). On the night of June 26, 2007, one day before the incident in question, Williams, with the assistance of his cellmate, Alan Holmes, once again flooded his cell, which was located on T-Block. (Trial Tr., 23:11-14). The two accomplished this by blocking up their toilets and allowing the water from the toilets to flood out of their cell and into adjoining areas of the prison. (Trial Tr., 23:15-19). In addition to causing this flood, Williams was kicking in his cell and yelling to other inmates to flood their own cells. (Trial Tr., 24:1-5).[4] Apparently, Williams and the other inmates were protesting the amount of food they had been receiving as their meals in the prison. (Trial Tr., 24:15-22 and 40:1-9).

As a result of the flooding that had occurred the night before, prison officials began a process of removing inmates on the T-Block from their cells on the morning of June 27, 2007. (Trial Tr., 50:5-13). All inmates were given the option of complying with the prison officials' demands to voluntarily be removed from their cells. (Trial Tr., 52:8-25). All of the inmates complied with prison officials'

---

[4] As a result of this conduct, Williams received a misconduct write-up "for destruction of county property, interfering with a staff member, sanitary violations, and an assault . . . ." (Trial Tr., 24:10-14; Defense Exhbt. No. 3).

6

demands except Williams and Holmes, who were located in cell T-8. (Trial Tr., 52:22-23).

A Corrections Emergency Response Team ("CERT") was assembled to remove Williams and Holmes from cell T-8. (Trial Tr., 53:11-17). The CERT squad appears to have included, among others, Correctional Officers Blume, Craven, Osterstrom, and DeRiggi. (Trial Tr., 50:10-13 and 73:19-21). Also involved in the extraction process were supervising officers Sergeant Masci, Sergeant Shanley, Lieutenant McGraw, Captain Chiarelli, and Assistant Warden of Security Joyce. (Trial Tr., 50:10-13). Defendant Masci, as a sergeant, was in a supervisory role and was not involved in physically restraining Williams or Holmes. (Trial Tr., 53:21-54:1). As such, Sergeant Masci did not wear the typical riot gear - which included, <u>inter alia</u>, a shield, a chest protector, knee pads, and elbow pads - worn by those officers tasked with restraining the two inmates. (Trial Tr., 54:4-6). At no time during the extraction procedure did Sergeant Masci even touch Williams or see any other officers assault or strike Williams. (Trial Tr., 54:19-55:4). Although a video camera was used to videotape extractions taking place on June 27, 2007, the battery in the camera died at some point along the upper tier of the T-Block,. (Trial Tr., 56:18-57:4).

Upon arriving at cell T-8, the extraction team could not see into the cell, as

7

the inmates had blocked the cell's entrance with a mattress and toilet paper. (Trial Tr., 71:15-22). In addition, the inmates were yelling such things as "Come get us," "Bring it," and "We're ready for you," as well as certain expletives. (Trial Tr., 71:1-3 and 72:16-17). Members of the extraction team asked Williams and Holmes to come out willingly, requests that were refused by the inmates. (Trial Tr., 72:4-10). The inmates were also ordered to place their hands through the wicket of the cell door so as to be handcuffed. These orders were refused as well. (Trial Tr., 72:10-13). The CERT squad was then ordered to move into the cell and extract the inmates by Assistant Warden Joyce. (Trial Tr., 72:22-25).

As the squad leader, Officer Blume opened the door to cell T-8 to allow the CERT squad to enter. By the time Officer Blume actually entered cell T-8 through the cell's door, both Williams and Holmes were handcuffed and shackled. (Trial Tr. 75:15-19). Holmes was removed from cell T-8 after being handcuffed and shackled, and Williams remained in the cell. (Trial Tr., 75:20-25). Like Sergeant Masci, Officer Blume did not touch Williams during the incident. (Trial Tr., 76:10-11). Similarly, Officer Blume saw no officers kick, punch, or otherwise physically assault Williams. (Trial Tr., 76:12-16). Upon entry into the cell, Officer Craven followed the lead of Officer Osterstrom and assisted in restraining Holmes. (Trial Tr., 89:4-20). Officer Craven neither handcuffed nor shackled

8

Williams and was not involved in removing Williams from cell T-8. (Trial Tr., 89:21-90:1). Similarly, Officer Craven did not see any other officers strike, kick, or assault Williams. (Trial Tr., 92:23-93:1).

After the incident, a nurse was called to the cell to provide any needed attention to Williams. (Trial Tr., 76:24-77:22). Medical records logged after the incident indicated that Williams had small scratches on his left arm and an abrasion on the top of his head. (Trial Tr., 55:7-9). No additional medical attention proved necessary.

## IV. APPLICABLE LAW AND DISCUSSION

The issue before this court is whether plaintiff Williams may properly recover on his claim for a violation of the Eighth Amendment to the United States Constitution for the excessive use of force by defendants Masci, Blume, and Craven.

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. CONST. amend. VIII. According to the United States Supreme Court, "the core judicial inquiry" in an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). The Court of Appeals for the Third Circuit has laid out the following factors for a court to consider in

9

determining whether an Eighth Amendment excessive force is actionable:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009).

In this case, we agree with the defendants that plaintiff Williams has failed to prove by a preponderance of the evidence that the defendants used excessive force, in violation of the Eighth Amendment, in restraining Williams on the morning of June 27, 2007. First, Williams has failed to sufficiently show that any of the remaining defendants touched Williams in any way during the incident on June 27, 2007. The testimony at trial, for example, showed that Sergeant Masci worked in a supervisory role on that morning and was not involved in restraining either inmate, that Officer Blume entered cell T-8 only after both inmates were restrained, and that Officer Craven in fact restrained inmate Holmes. Second, none of the remaining defendants saw any officers kick, punch, or unreasonably restrain Williams, though Holmes testified that he saw officers assault Williams when Williams was handcuffed. (Trial Tr., 37:12-24, 41:10-12). Holmes, however, could not identify those officers who were tasked with restraining Williams. (Trial

Tr., 37:13-16). Finally, the injuries that Williams did suffer from the incident support the defendants' contention that the force used to restrain Williams was minimal and reasonable under the circumstances, as Williams and Holmes had refused to voluntarily submit to prison officials and had barricaded themselves in cell T-8.

## V. CONCLUSION

In light of the above, we find that the force used against plaintiff Williams was reasonable and "applied in a good-faith effort to maintain or restore discipline," not "maliciously [or] sadistically to cause harm." Hudson, 503 U.S. at 7. Therefore, we conclude that the plaintiff has failed to establish that defendants Masci, Blume, and Craven violated his Eighth Amendment right to be free from "cruel and unusual punishments." As such, the court will enter judgment in favor of defendants Masci, Blume, and Craven and against Williams as to Williams' Eighth Amendment excessive force claim, the only claim remaining.

    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDRE CHRISTOPHER WILLIAMS, | : | |
| | : | |
| Plaintiff, | : | No. 4:CV-07-1137 |
| | : | |
| v. | : | (McClure, J.) |
| | : | |
| LACKAWANNA COUNTY PRISON; JANINE DONATE; BARRY CRAVEN; SCOTT BLUME; CHRIS MASCI; and ARAMARK CORRECTIONAL SERVICES, LLC, | : | (Mannion, M.J.) |
| | : | |
| Defendant | : | |

**ORDER**

September 14, 2010

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1. The court finds that the evidence admitted at trial fails to establish that defendants Masci, Blume, and Craven violated the plaintiff's Eighth Amendment right to be free from "cruel and unusual punishments."

2. The clerk is directed to enter final judgment in favor of all defendants

and against plaintiff as to the sole remaining claim, the plaintiff's Eighth Amendment excessive force claim.

3. This order constitutes a final order reconfirming the order of April 13, 2010 granting summary judgment in favor of defendant Aramark Correctional Services, LLC, and dismissing all other claims.

4. The clerk is directed to close the case file.

5. Any appeal from this order would not be taken in good faith.

              s/ James F. McClure, Jr.
              James F. McClure, Jr.
              United States District Judge